16 F.3d 417
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Michael O. TATUM, Plaintiff-Appellant,
v.
PHILIP MORRIS INCORPORATED, doing business as Philip Morris
USA, a foreign corporation; Philip Morris Management
Corporation, a foreign corporation; Ralph Rayburn, sued in
both his individual and representative capacities,
Defendants-Appellees.
 No. 93-6018.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 14, 1993.
 
 1
 Before ANDERSON and EBEL, Circuit Judges and Winder,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff appeals from an adverse judgment entered by the district court in this combination Title VII/state tort action. Plaintiff was discharged from his employment with defendant Philip Morris Inc. (PMI) for allegedly stealing a bottle of wine at a company reception. PMI subsequently selected a female to fill the position vacated by plaintiff. Alleging that the wine incident was merely a false pretext to replace him with an attractive (though less qualified) woman, plaintiff brought suit for sex discrimination under Title VII. In addition, plaintiff asserted several pendent state law claims, including wrongful discharge in violation of public policy, tortious interference with contract, employment, and economic relations, defamation, intentional infliction of emotional distress, respondeat superior, and negligent retention, all for which he timely demanded a jury trial.
 
 
 4
 The district court bifurcated the action and, over plaintiff's objection, tried the Title VII claim first. At the conclusion of the bench trial, the district court held that plaintiff had failed to carry his burden of showing discrimination. Shortly thereafter, the district court granted defendants' pending motion for summary judgment on the remaining claims. On appeal, plaintiff argues: (1) the procedure employed by the district court deprived him of his right to a jury trial on the state tort claims; (2) contested issues of fact should have precluded summary judgment on those claims; (3) he was denied proper discovery; and (4) the district judge should have recused himself for bias. We affirm the judgment of the district court for the reasons to follow.
 
 
 5
 We need not pause long over the first issue raised by plaintiff. Regardless of the Title VII determination, if the district court correctly granted summary judgment on the pendent state law claims, the procedural handling of the case could not have had any impact on plaintiff's right to a jury trial. In short, the proper pretrial disposition of plaintiff's legal claims rendered the jury trial issue moot. See Plaisance v. Phelps, 845 F.2d 107, 108 (5th Cir.1988); B & L Sales Assocs. v. H. Daroff & Sons, Inc., 421 F.2d 352, 354 (2d Cir.), cert. denied, 398 U.S. 952 (1970). Consequently, while we recognize that such claims generally must be tried to a jury before overlapping equitable claims are tried to the bench, see Skinner v. Total Petroleum, Inc., 859 F.2d 1439, 1443 (10th Cir.1988), we need not decide whether this rule, developed in cases where the legal claims possessed independent federal jurisdictional bases, should be suspended where, as here, the legal claims are cognizable in federal court only through pendent jurisdiction. In the former context, the legal claims would still have to be decided on the merits whatever the resolution of the equitable claim, while in the latter context, pendent jurisdiction over the legal claims could always be declined if the equitable claim proved unsuccessful. Thus, it was at least arguably proper for the district court to set the equitable claim for hearing first, given that its disposition could obviate consideration of the legal claims should the district court thereafter find the continued exercise of pendent jurisdiction unwarranted.[2]
 
 
 6
 We turn now to the claims disposed of on summary judgment. This court recently summarized our standard of review for summary judgment on state law issues as follows:
 
 
 7
 We review summary judgment de novo and apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c). Summary judgment is appropriate if there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law. We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. [Oklahoma] law governs [the state law claims], and in the absence of state cases on point we will look to other state courts as well as federal decisions. We review de novo the district court's application of [Oklahoma] law.
 
 
 8
 Green Constr. Co. v. Kansas Power & Light Co., 1 F.3d 1005, 1008 (10th Cir.1993)(citations and internal quotations omitted). We note that in keeping with the particular procedural circumstances surrounding its Rule 56 determination, the district court expressly discounted any reliance on the prior bench proceedings, noting that its "grant of summary judgment is based solely on the evidence presented by the motion, briefs and exhibits presented by the parties to the motion." App. Vol. I at 98.
 
 
 9
 Although plaintiff generally objects to the grant of summary judgment on all of his state tort claims, his appellate briefs contain no argument relating specifically to his claims for intentional infliction of emotional distress and respondeat superior. Accordingly, we do not address the propriety of summary judgment with respect to those claims. See Culver v. Town of Torrington, 930 F.2d 1456, 1461 (10th Cir.1991)(issue not argued in appellate brief is waived). Furthermore, as to the negligent retention claim, plaintiff's complaint that defendants "did not address this issue except in a last minute footnote of their brief without citation to authority or to fact," Opening Brief of Appellant at 39, is not an objection to the substance of the district court's ruling thereon, and his perfunctory, unsupported conclusion that summary judgment "should have been denied," id., is not adequate appellate argument, see Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024-25 (10th Cir.) (to challenge summary judgment, nonmovant must identify sufficient contrary evidence in record; absent such specific reference, we will not search the record to determine whether there exists evidence which might require submission of case to jury), cert. denied, 113 S.Ct. 635 (1992); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir.) (applying "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"), cert. denied, 494 U.S. 1082 (1990).
 
 
 10
 We begin our substantive review of summary judgment, then, with plaintiff's claim for wrongful discharge in violation of the public policy against invidious discrimination. See generally Tate v. Browning-Ferris, Inc., 833 P.2d 1218 (Okla.1992); Burk v. K-Mart Corp., 770 P.2d 24 (Okla.1989). As plaintiff acknowledges, see Reply Brief of Appellant at 4, this "public policy tort" essentially parallels or incorporates plaintiff's sex discrimination claim under Title VII. See Sanchez v. Philip Morris Inc., 992 F.2d 244, 248 (10th Cir.1993)("Oklahoma recognizes a separate public policy tort claim for plaintiffs alleging facts sufficient to state a claim that they were wrongfully discharged in violation of, inter alia, Title VII"). The district court rejected the claim because:
 
 
 11
 while Plaintiff states that he did not take the bottle of wine, he has provided no evidence that representatives of Philip Morris did not believe that he stole the bottle of wine at the time he was terminated and has produced no evidence that his termination was for any acts other than his acts of theft and insubordination.
 
 
 12
 Defendants, on the other hand, have produced specific evidence which Plaintiff failed to dispute that his employment was terminated only because of his dishonesty for stealing the bottle of wine and for insubordination....
 
 
 13
 ....
 
 
 14
 The court finds that there is no genuine issue as to any material fact that precludes Defendants from obtaining summary judgment on Plaintiff's claim that Defendants violated the public policy of Oklahoma. The court finds that the undisputed evidence presented to the court establishes that ... gender played no part in the decision to terminate [plaintiff's] employment [and] ... that Defendants believed Plaintiff stole the bottle of wine and terminated his employment based only upon that belief.
 
 
 15
 App. Vol. I at 106-08. Recast in the traditional terminology of employment discrimination jurisprudence, the district court's holding was that plaintiff had failed to rebut, as mere pretext for sex discrimination, the legitimate reason given for his discharge.[3]
 
 
 16
 Defendants presented substantial evidence that plaintiff was fired for dishonesty and insubordination based on his alleged theft of the bottle of wine after he specifically was told by his superiors not to take it. Defendants relied on several eyewitness accounts of the incident in arriving at their decision to terminate plaintiff. On appeal, plaintiff argues that the accuracy of these accounts is disputed by his own testimony and that of two of his witnesses. However, the materials cited by plaintiff indicate that the latter witnesses never came forward during his investigation and termination by defendants. At that time, defendants were confronted with concerted eyewitness accusations of plaintiff's theft--bolstered by his earlier expressions of interest in the object stolen--that were countered only by plaintiff's self-serving denial of wrongdoing. Under the circumstances, plaintiff's termination simply does not raise a triable inference of discrimination. Even if plaintiff's witnesses were correct, the only conclusion permitted on our record is that defendants reasonably (if erroneously) determined plaintiff was guilty of dishonesty and insubordination and fired him accordingly. The exercise of such business judgment does not provide a basis for a finding of pretext and, thus, discrimination.[4] Cf. Fallis v. Kerr-McGee Corp., 944 F.2d 743, 747 (10th Cir.1991); Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir.1988). Furthermore, we concur in the district court's negative assessment of the evidence through which plaintiff sought to prove discriminatory intent more directly. See, inter alia, App. Vol I at 104-09.
 
 
 17
 Plaintiff's claim for interference with contract, employment, and economic relations is based on defendants' communication of his termination, and the reasons therefor, to PMI's customers, particularly those whom plaintiff characterizes as potential employers. While the district court rejected this claim for a number of reasons, we need only note our agreement with its holding that plaintiff failed to establish any protected interest or relationship with which defendants interfered.
 
 
 18
 The first element of a cause of action for tortious interference is the existence of a contractual or business relationship, see Ellison v. An-Son Corp., 751 P.2d 1102, 1106 (Okla. Ct.App.1987); cf. Haynes v. South Community Hosp. Management, Inc., 793 P.2d 303, 306-07 (Okla. Ct.App.1990); Del State Bank v. Salmon, 548 P.2d 1024, 1025-28 (Okla.1976), and plaintiff simply has not shown one. While Oklahoma also recognizes a related theory of interference with prospective economic advantage, see Overbeck v. Quaker Life Ins. Co., 757 P.2d 846, 847-48 (Okla. Ct.App.1984) (whereas interference with contract involves loss of existing property right, interference with prospective economic advantage involves loss of reasonable expectation of profit), such a claim requires the plaintiff to "show either that prospective economic advantage would have been achieved had it not been for such interference or that there was, in view of all the circumstances, a reasonable assurance thereof," Crystal Gas Co. v. Oklahoma Natural Gas Co., 529 P.2d 987, 990 (Okla.1974)(quoting 45 Am.Jur.2d, Interference 6 (1984))(emphasis added). As in Crystal Gas, there is insufficient evidence cited to support an inference that plaintiff would have achieved profitable economic relations, i.e., obtained employment, but for defendants' conduct.
 
 
 19
 That leaves plaintiff's state law claim for defamation, based on defendants' publication of the reason for his discharge. The district court rejected this claim for several reasons. Again, we need consider only one of these.
 
 
 20
 We agree with the district court's determination that defendants had a conditional privilege under Oklahoma law to inform interested parties, including customers and employees, of the fact and circumstances of plaintiff's termination. See M.F. Patterson Dental Supply Co. v. Wadley, 401 F.2d 167, 170-71 (10th Cir.1968). See generally Fawcett Publications, Inc. v. Morris, 377 P.2d 42, 52 (Okla.1962) (discussing common law conditional privilege doctrine), cert. denied, 376 U.S. 513 (1964). With that legal determination, whatever malice may have been presumed in law from defendants' accusation of theft was negated, leaving it plaintiff's burden to show such actual malice on the part of defendants as would defeat the privilege. See Reininger v. Prickett, 137 P.2d 595, 598 (Okla.1943); Meistrell v. McPhail, 788 P.2d 1387, 1388 (Okla. Ct.App.1989). The district court held plaintiff had not demonstrated a triable issue in this regard. See Meistrell, 788 P.2d at 512 (affirming summary judgment where plaintiff did not point to any evidence of malice); cf. Reininger, 137 P.2d at 598 (affirming directed verdict for defendant because of lack of evidence sufficient to establish prima facie case of malice). Plaintiff, whose only mention of the matter on appeal consists of a citation to Wadley for the general proposition that malice is a factual issue for the jury, does not point to anything in the record to challenge the district court's holding that the facts did not warrant submission to the jury. We can only conclude the issue was properly resolved in defendants' favor. See Thomas, 968 F.2d at 1024-25.
 
 
 21
 Turning now to other matters, Plaintiff objects to the denial of his request for a continuance to conduct immediate discovery regarding a belatedly produced advertisement for his position run by an agency retained by PMI. Specifically, plaintiff wished to halt the proceedings until he deposed someone from the agency who could relate the qualifications and characteristics, if any, PMI wanted included in the ad. Given the procedural circumstances, the untaken opportunity to pursue pertinent discovery in a timely manner,[5] and the facially unprobative nature of the advertisement itself, we cannot say the district court abused its discretion in denying plaintiff's request for eleventh-hour discovery. See generally Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir.1992); Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir.1990).
 
 
 22
 Finally, plaintiff raises the spectre of judicial bias, based on certain adverse rulings and the district judge's informal expression of skepticism regarding the persuasiveness of plaintiff's reverse sex discrimination case. Neither of these is a sufficient basis to compel the recusal of a trial judge. See Green v. Dorrel, 969 F.2d 915, 919 (10th Cir.1992)(adverse rulings do not provide adequate grounds for disqualification), cert. denied, 113 S.Ct. 1336 (1993); United States v. Page, 828 F.2d 1476, 1481 (10th Cir.) (unfavorable opinion of case's merit does not provide basis for disqualification unless derived from extrajudicial sources), cert. denied, 484 U.S. 989 (1987). Furthermore, plaintiff fails to allege facts sufficient to suggest the "pervasive bias and prejudice" necessary to warrant recusal on the basis of attitudes developed during the course of the judicial proceeding. See Page, 828 F.2d at 1481.
 
 
 23
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 **
 Honorable David K. Winder, Chief Judge, United States District Court for the District of Utah, sitting by designation
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 Indeed, plaintiff argues at one point that if the district court did not err in deciding the Title VII claim first, the remaining claims should have been dismissed without prejudice for lack of jurisdiction. See Reply Brief of Appellant at 5-6. We note, however, that such a ruling is discretionary, and, given the relatively late stage in the proceedings at which the Title VII claim was resolved, we cannot say the district court abused its discretion in retaining jurisdiction over the remaining, interrelated state law claims. See Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir.1990)
 
 
 [3]
 It is appropriate to use the burden-shifting formulation established for assessment of federal employment discrimination actions in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), and McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to analyze plaintiff's public policy tort claim. See, e.g., Erickson v. Marsh & McLennan Co., 545 A.2d 812, 815 & n.1 (N.J.Super.1988), aff'd in pertinent part, rev'd in part on other grounds, 569 A.2d 793, 798-99 (N.J.1990); Phipps v. Clark Oil & Ref. Corp., 408 N.W.2d 569, 571-72 (Minn.1987); cf. Buckner v. General Motors Corp., 760 P.2d 803, 806-07 (Okla.1988)(claim under retaliatory discharge provision of state workers' compensation act analyzed under federal formulation)
 
 
 [4]
 We note plaintiff does not argue that other PMI employees, particularly women, were retained despite comparable transgressions, so this case does not involve the complication of disparity in discipline discussed in EEOC v. Flasher Co., 986 F.2d 1312, 1319-22 (10th Cir.1992)
 
 
 [5]
 Defendants point out that long before this case came on for disposition, plaintiff's counsel was given documents indicating PMI had sought applicants for plaintiff's position from the agency that ran the ad. See App. Vol. III at 385-86. Thus, counsel had had at least five months, from the reopening of discovery in June of 1992 until November of 1992, to question the agency's personnel regarding pertinent instructions PMI may have related concerning the substitute sought for plaintiff