**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 21 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BRENT E. TESH,

     Plaintiff-Appellant,

v.

UNITED STATES POSTAL
SERVICE,

     Defendant,

and

JOHN E. POTTER, Postmaster
General, United States Postal Service,

     Defendant-Appellee.

No. 02-5133

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 01-CV-99-EA)**

---

David W. Davis of Davis, Champ & Associates, Tulsa, Oklahoma, for Plaintiff-Appellant.

Cathryn D. McClanahan, Assistant United States Attorney (David E. O'Meilia, United States Attorney, with her on the brief), Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **HARTZ**, **HOLLOWAY**, and **McKAY**, Circuit Judges.

---

**McKAY**, Circuit Judge.

This case was brought to trial on Appellant Tesh's allegation that Appellee United States Postal Service (USPS), his former employer, discriminated against him in violation of the Rehabilitation Act, 29 U.S.C. §§ 707-797b. Specifically, Appellant alleged that USPS terminated him because of his disability (injury to both knees) and failed to accommodate him by not meeting his physician's job restrictions. USPS argues that it made reasonable accommodations and that it terminated Appellant because an investigation revealed that Appellant was dishonest in pursuing his workers' compensation claim, including adding his own medical restrictions without his doctor's authorization. Rec., Vol. I, at 125-30. At the end of Appellant's case-in-chief, the district court granted judgment for USPS on the accommodation issue pursuant to Fed. R. Civ. P. 50(a). The termination issue went to the jury, which returned a verdict for Appellant and awarded him $25,000. However, the district court vacated this verdict and its prior order denying USPS's motion for summary judgment, and granted judgment as a matter of law for USPS on all claims. The district court also granted USPS' motion for a new trial on the termination issue in the event that this court reversed its judgment for USPS. Appellant now asks us to reverse the district court's judgment as a matter of law, reinstate the jury's verdict, and order a new trial on the accommodation issue.

*Termination Claim*

A person with a protected disability establishes a prima facie case of discriminatory discharge "by demonstrating that: (1) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (2) her employer terminated her employment under circumstances giving rise to an inference that the action was based on her disability." Selenke v. Medical Imaging of Colorado, 248 F.3d 1249, 1259 (10th Cir. 2001). To establish the second prong, an employee must show a nexus, or "at least a logical connection" between his disability and the termination. See Greene v. Safeway Stores, Inc., 98 F.3d 554, 558 (10th Cir. 1996). "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). But if the employer articulates "a legitimate nondiscriminatory reason for the action . . . [, the employee] must show [the employer's] proffered reasons are pretextual." Sanchez v. Denver Pub. Schs., 164 F.3d 527, 531 (10th Cir. 1998). When evaluating evidence of pretext, "we examine the facts as they appear to the person making the decision to terminate [Appellant]." Selenke, 248 F.3d at 1261 (internal quotations and citations omitted).

We review a grant of judgment as a matter of law *de novo* and apply the same standards as the district court. See Greene, 98 F.3d at 557. That is, the judgment was proper if, during the trial, Appellant was "fully heard on an issue

and there [was] no legally sufficient evidentiary basis for a reasonable jury to find for" him. Fed. R. Civ. P. 50(a). Although we "construe the evidence and inferences in the light most favorable to the nonmoving party," Greene, 98 F.3d at 557, our ability to do so is hampered because Appellant did not cite to the record in his statement of the facts. "It is obligatory that an appellant, claiming error by the district court as to factual determinations, provide this court with the essential references to the record to carry his burden of proving error." SEC v. Thomas, 965 F.2d 825, 827 (10th Cir. 1992); see also Fed. R. App. P. 28(a)(7). We generally "decline to 'sift through' the record in search of [Appellant's] contentions of error." Id. Notwithstanding this, we will review the merits of this appeal, but will only draw inferences in Appellant's favor to the extent that his citations permit us to do so.

The district court granted judgment for USPS on the termination claim because Appellant's supervisor, Mr. Breitenbach, "made the decision to terminate Tesh because of Tesh's alleged dishonesty–not because of his disability–and Tesh presented no evidence to the contrary." Aplt. Br., Ex. A, at 4. On appeal, Appellant argues that he submitted facts that showed a connection between his termination and his disability. However, the legal issue is not whether Appellant established a connection between his disability and his termination but whether Appellant submitted evidence that USPS used an allegation of dishonesty as a

-4-

pretext for discrimination.  See Seleneke, 248 F.3d at 1260.

After reviewing the briefs, the record, and the law, we hold that there was no legally sufficient basis on which a jury could conclude that USPS' proffered reason for terminating Appellant–dishonesty–was pretextual.  Instead of showing pretext, Appellant points to evidence that the investigative memorandum, which Mr. Breitenbach relied on in terminating him, may have been inaccurate or incomplete.  Aplt. Br., at 9-17.  For example, Appellant cites to evidence that the investigator misquoted him in the report, left out certain information, and incorrectly inferred that USPS had a formal policy against Appellant filling out the OWCP-5 forms.  See id. at 13-15.  But since we must assess pretext by examining the facts as they appear to the person making the decision to terminate, the question is not the factual accuracy of the memo but whether USPS reasonably "perceived" that it was accurate.  Hardy v. S.F. Phosphates Ltd. Co., 185 F.3d 1076, 1080 (1999).

We stressed this focus on the employer's reasonable belief in Tatum v. Philip Morris Inc., 16 F.3d 417 (10th Cir. 1993), an unpublished decision that is persuasive here because of the similarity between the employees' legal arguments. In Tatum, the employer "presented substantial evidence that plaintiff was fired for dishonesty and insubordination based on his alleged theft of [a] bottle of wine after he specifically was told by his superiors not to take it."  Tatum, 16 F.3d at

*3. Although the employee had eyewitness testimony that he did not steal the wine, the district court granted summary judgment for the employer because there was "no evidence that [the] representatives of [the employer] did not *believe* that he stole the bottle of wine." Id. (emphasis added). On appeal, we affirmed judgment in favor of the employer because the record could only support the conclusion that the employer reasonably, even if erroneously, believed that the employee was dishonest and fired him on that basis. See id.

Like Tatum, the record in this case can only support the conclusion that USPS reasonably believed that Appellant was dishonest during the pendency of his workers' compensation claim. Whether that belief was erroneous is irrelevant. The investigative memorandum is a six-page report with additional exhibits, and it lists dates, personal interviews, and direct quotes from Appellant's medical care providers. Rec., Vol. I, at 125-30. The investigator interviewed Appellant's doctors and their staff and reviewed documents relevant to the workers' compensation claims.

The memorandum gives numerous examples of dishonesty. For example, it reports that one of Appellant's doctors told the investigator that "we both know [that Appellant is] playing the system." Id. at 128. The investigator also attached a letter from this doctor, which states that Appellant "did not tell me he would be adding any typewritten comments" and that he "did not authorize or know that

[his assistant] had signed for" him. Id. at 131. The investigator reported that Appellant's doctor "did not recall speaking with Mr. Tesh about a motorized wheelchair [which Appellant included on an OWCP-5 form] and that he did not need one." Id. at 127. Another example of dishonesty was the investigator's statement that, contrary to what Appellant submitted on an OWCP-5 form, Appellant's doctor concluded that "Mr. Tesh could work 8 hours per day in a sedentary position." Id. at 126-27. The investigator also interviewed the assistant to one of Appellant's doctors and reported her statement that "Mr. Tesh created [a medical form] as if Dr. Cash was the author" when Dr. Cash was not. Id. at 128.

Despite the numerous allegations of dishonesty in the investigative memorandum, Appellant argues that pretext can be inferred from USPS' failure to discuss these allegations with him prior to his termination. However, it is undisputed that Appellant was interviewed by inspectors and that he admitted that he typed some of the medical restrictions "on his home typewriter . . . [and] did not previously discuss" some of these provisions with his doctor. Id. at 129. Appellant further argues that pretext can be inferred because only when he "became disabled and made a communication to his doctor concerning his restrictions did any issue arise concerning his honesty." Aplt. Br., at 16. While this evidence may establish a connection between Appellant's disability and the forms on which he was accused of being dishonest, it does not give a jury a legal

basis for finding that USPS used dishonesty as a pretext for discrimination. USPS argues that it terminated Appellant because he submitted dishonest information. We see no reason to treat this information, which happened to relate to disability forms, any differently than we would treat other types of information.

Appellant next argues that the lack of medical testimony from USPS that Appellant exaggerated or distorted his medical condition shows pretext. Id. at 15. However, since the question before us is whether USPS reasonably believed that Appellant was dishonest based on the facts it had at the time, medical testimony which USPS did not have when it terminated Appellant is irrelevant. Appellant submitted several other facts to demonstrate pretext, but we conclude that these are even more tenuous and, therefore, of less value to Appellant in satisfying his burden.

Despite this conclusion, we acknowledge Appellant's policy argument that a rigid rule could allow some employers to insulate themselves from liability for discrimination by merely saying that they relied on a report that was not credible. However, this policy concern does not arise in this case, since Appellant has not submitted evidence demonstrating that the investigator was not credible and the report itself is a detailed account of the investigator's personal interviews with Appellant's medical care providers and a review of relevant documents. Moreover, although we have stressed the importance of the employer's belief and

although we examine the facts as they appear to the employer, the touchstone is whether the employer *reasonably* believed that the report was accurate. If an employee submitted evidence showing that an investigation was a sham only done to cover up discrimination, an employer could not reasonably rely on it. Since no such showing has been made here, we affirm the district court's judgment on the termination issue for lack of evidence of pretext.

*Accommodation Claim*

We also affirm the district court's judgment on the accommodation claim. Under the Rehabilitation Act, discrimination may include "not making reasonable accommodations to the known physical or mental limitations" of disabled individuals. 42 U.S.C. § 12112(b)(5)(A) (1995). We have held that federal employers like USPS "must play a considerable role in ensuring that every reasonable effort is made to find suitable jobs for disabled employees." Woodman v. Runyon, 132 F.3d 1330, 1344 (10th Cir. 1997). But we have also held that "[w]ithout question, employees must come forward with that information they are best placed to know–the fact and nature of their disability and their wish to be accommodated." Id.

At the close of Appellant's case-in-chief, the district court granted judgment for USPS on the accommodation claim. We review the district court's judgment *de novo* and apply the same standards it applied. See Greene, 98 F.3d at

557. That is, if there was "no legally sufficient evidentiary basis for a reasonable jury to find for" Appellant, we will affirm. Fed. R. Civ. P. 50(a)(1). This court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Servs., 530 U.S. 133, 151 (10th Cir. 2000).

Appellant claims that "USPS failed to accommodate him by not meeting his physician's restrictions [when he was transferred to] the main post office." Aplt. Reply Br., at 18. Appellant concedes that he "is not collaterally attacking the Department of Labor's decision made in February, 1998 that the job at the main post office is a valid job offer." Aplt. Reply Br., at 18. Appellant also does not dispute that this court is without jurisdiction to review this binding DOL decision. The DOL's letter to Appellant stated that the Office of Workers' Compensation Programs found this job "suitable to [his] work capabilities." Rec., Vol. I, at 113. Moreover, Appellant stipulated that he "was physically qualified to perform the job assigned to him in February of 1998 at the main post office . . . ." Rec., Vol. V, at 1512.

Despite this stipulation, Appellant claims that USPS unlawfully failed to accommodate him in three ways: not providing a suitable chair, not providing adequate parking, and not allowing him to work a daytime shift. Aplt. Reply Br., at 19-20. First, regarding the chair, Appellant stipulated that "normally a rest bar

would have been used in [his] assignment, but that [he] requested a [different] chair and the chair was sent . . . at the time he started working at the main post office." Rec., Vol. V, at 1512. No reasonable juror could find USPS liable for failing to accommodate Appellant's need for a specific chair when it provided him with the chair he requested.

Second, regarding parking, Appellant's doctor advised the DOL that if Appellant "had the ability to park close to his workplace, [he did] not think he would need a motorized wheelchair." Rec., Vol. I, at 121. It is unclear from the briefs or from the record what USPS would have done to accommodate Appellant's parking needs if he had remained employed at USPS. The record does reflect that USPS was in the process of evaluating the available options, including potentially assigning him a handicap space. Rec., Vol. II, at 460. However, since Appellant was terminated, this issue was not resolved. Appellant only worked at the main post office for three weeks before he left for knee surgery. During this three-week period, USPS was reviewing the investigative memorandum which alleged that Appellant had committed fraud during the pendency of his workers' compensation claim. We hold that no reasonable jury could conclude that USPS failed to make reasonable efforts to accommodate Appellant's parking needs under these circumstances.

Third, Appellant argues that USPS failed to accommodate him by offering

him a graveyard shift when one of his doctors advised him on January 5, 1998, "not [to] work any night or graveyard shifts" because of hypertension and diabetes. Rec., Vol. III, at 1055. However, in the doctor's own words, this shift restriction is unrelated to the knee disability that Appellant claims in this case. Moreover, "employees must come forward" with the information about the things they seek to be accommodated on. Woodman, 132 F.3d at 1344. In this case, Appellant offered no evidence that he made a supervisor at USPS aware of this limitation. For these reasons, we hold that there was no basis for a reasonable jury to find USPS liable for failure to accommodate Appellant.

We affirm the trial court's judgment as a matter of law in favor of USPS on both the discrimination and the accommodation claims. Since we affirm on both claims, we need not reach the issue of whether to grant a new trial.

**AFFIRMED**.