**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 12 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ZONA JOYCE STEFFEN,

      Plaintiff - Appellant,

v.

ANITA ELAINE HELEMS; JAMES
HELEMS; EVERETT LYNN
BOLTON; JOYCE BOLTON,

      Defendants - Appellees.

No. 01-7158
D.C. No. 01-CV-80-S
(E.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

I.    INTRODUCTION

Plaintiff Zona Steffen ("Steffen") sought compensatory and punitive damages from Defendants Anita Elaine Helems, James Helems, Everett Lynn Bolton, and Joyce Bolton (collectively, "Defendants") for intentional infliction of emotional distress resulting from the alleged loss of the love and affection of

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Steffen's mother. Exercising diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332, the district court granted summary judgment in favor of Defendants. The court also granted Defendant Anita Helems and Defendant James Helems' (jointly, "Helems") motions to suppress Steffen's corrections to her deposition and to lodge the original deposition with the court. This court has jurisdiction under 28 U.S.C. § 1291 and **affirms**.

II.    BACKGROUND

Steffen's natural mother was the stepmother of Defendant Anita Helems ("Anita") and Defendant Everett Lynn Bolton ("Lynn"). In 1991, the mother and her then husband, Steffen's stepfather, created a joint trust which provided for equal distributions among Steffen, Anita, and Lynn. The mother was adjudicated incapacitated due to Alzheimer's disease on November 21, 1996. In 1997, the stepfather created a new trust into which he transferred the assets of the joint trust. Steffen was not named as a residual beneficiary of the new trust. In January 1999, the appointed guardian of the mother's estate filed an action to recover the assets that were transferred from the joint trust to the new trust. The litigation was financed by Steffen.

Thereafter, the relationship between Steffen and Defendants became strained. Steffen alleges that Defendants began to engage in conduct intended to interfere with her relationship with her mother. On February 5, 1999, Anita told

Steffen that her mother and the stepfather did not want to see Steffen and that her mother was afraid of Steffen. Anita also assisted the stepfather with seeking protective orders against Steffen. In March 1999, Steffen traveled from California to Oklahoma to visit her mother and stepfather. When Steffen arrived, Anita was also at the home. The mother and stepfather told Steffen that she couldn't stay with them because of the trust litigation. When Steffen asked her mother if she knew about the lawsuit, the mother responded, "What lawsuit?"

Steffen frequently visited with her mother and maintained regular telephone contact. However, Steffen claims Defendants would interfere with or impede the visits with her mother. For example, Anita would often sit with Steffen's mother during the entire visit. In October 1999, Anita moved the mother and stepfather into her home to live permanently. Anita, however, failed to inform Steffen that her mother was residing with Anita. Furthermore, Anita refused to give Steffen her telephone number. In one instance, Steffen encountered difficulty in complying with court-ordered visitation arrangements because she did not have the number. Also, Anita would allegedly cause Steffen's mother to become hostile and agitated just prior to the visits. Moreover, Steffen claims that during the visits, Lynn and Anita would use an acoustical noise generator to disrupt Steffen's attempts to record the interactions with her mother, and James Helems

("James") would selectively videotape only the visits during which Steffen's mother acted hostile toward Steffen.

Anita would also make disparaging or negative comments about Steffen to her mother or stepfather. These comments would cause the mother to act aggressively toward Steffen. On one occasion, while at the dentist, Steffen's mother became hostile after Anita told the mother that Steffen wanted to have the mother's teeth pulled. Steffen also suspected Defendants had filed complaints with the police alleging that Steffen was responsible for an injury to her mother.

III.  DISCUSSION

The principal issue on appeal is whether the trial court erred in granting Defendants' motion for summary judgment. Applying the same legal standard used by the district court, this court reviews the grant of summary judgment *de novo*. *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1552 (10th Cir. 1995). Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This court views the evidence in the light most favorable to the party opposing the summary judgment motion. *Starr*, 54 F.3d at 1552. However, if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to

that party's case," summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Oklahoma recognizes the tort of intentional infliction of emotional distress as articulated in the Restatement (Second) of Torts § 46. *Starr*, 54 F.3d at 1558. Under Oklahoma law, to establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the plaintiff actually experienced emotional distress; and (4) the emotional distress was severe. *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1991).

The trial court is responsible for initially determining "whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous" to permit recovery.[1] *Miller v. Miller*, 956 P.2d 887, 901 (Okla. 1998); *see also* Restatement (Second) of Torts § 46 cmt. h (1965). To satisfy this standard, the defendant's conduct must be "so offensive 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Daemi*, 931 F.2d at 1388 (quoting

_____

[1]Once the trial court has determined that reasonable persons may differ as to whether the defendant's conduct is extreme and outrageous, whether the conduct is sufficiently extreme and outrageous to impose liability is a question for the jury. *Breeden v. League Servs. Corp.*, 575 P.2d 1374, 1377 (Okla. 1978).

Restatement (Second) of Torts § 46 cmt. d). Extreme and outrageous conduct is not merely "unpleasant examples of human behavior which we all must endure from time to time," but rather conduct that has "totally and completely exceeded the bounds of acceptable social interaction." *Miller*, 956 P.2d at 901.

In granting summary judgment in favor of Defendants, the district court determined that the actions of Defendants as alleged by Steffen did not rise to the level of extreme and outrageous conduct required to prevail on an intentional infliction of emotional distress claim. Steffen argues that in reaching its conclusion the district court failed to consider the affidavit of Stephen Read, M.D. In his affidavit, Dr. Read declared that the mother's negative feelings and behavior toward Steffen, the similarity of feelings about Steffen held by Anita and others, and the tendency for the mother's negative feelings toward Steffen to abate after a short time alone with Steffen, "compellingly suggest" that the mother's hostility toward Steffen likely resulted from actions and influence of Anita and others.

After reviewing the record, including Dr. Read's affidavit, this court concludes that Steffen has failed to demonstrate that Defendants' conduct was sufficiently "extreme" or "outrageous." Steffen does not distinguish the actions of Defendants as any more egregious than what would be expected in a family dispute. Furthermore, during her deposition testimony, Steffen admitted that

some alleged conduct by her primary antagonist, Anita, was based on speculation. Also, despite the alleged interference, Steffen was able to visit with her mother on a frequent basis. Finally, Dr. Read's conclusions were reached without an independent evaluation of the mother and based in part upon discussions with Steffen and her attorney. In his affidavit, Dr. Read merely affirms Steffen's position that the attitudes of Defendants could affect the mother's feelings and behaviors. Dr. Read's affidavit provides no additional support for Steffen's allegations that Defendants' conduct was extreme or outrageous.

This court **AFFIRMS** the district court's grant of summary judgment in favor of Defendants.[2]

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

---

[2]This court need not resolve whether the trial court erred in suppressing Steffen's deposition corrections. Even with the corrections incorporated into her testimony, Steffen has failed to demonstrate that Defendants' conduct was sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress. Because the corrected deposition testimony does not alter this court's conclusion that summary judgment was appropriate, it is not necessary to address whether the corrections were allowed under Rule 30(e) of the Federal Rules of Civil Procedure.