**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS** **January 28, 2015**

**TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

DONNA MEYERS,

Plaintiff–Appellant,

v.

No. 13-6302

EASTERN OKLAHOMA COUNTY
TECHNOLOGY CENTER, a
political subdivision of the State of
Oklahoma; TERRY UNDERWOOD,
Superintendent of EOC in his
official and individual capacity;
ERIK REYNOLDS, Assistant
Superintendent of EOC in his
official and individual capacity,

Defendants –Appellees.

LARRY STEPHENS; RODNEY
ALBEE; DENNIS DELANO; GARY
HOWARD; AND MIKE O'BOYLE,

Defendants.

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:10-CV-01058-F)**

Guinise Marie Marshall, Marshall Law Office, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Jerry A. Richardson, Rosenstein, Fist & Ringold, Tulsa, Oklahoma (Karen L. Long, Rosenstein, Fist & Ringold, Tulsa, Oklahoma, with him on the briefs), for Defendants-Appellees.

---

Before **TYMKOVICH**, **GORSUCH**, and **BACHARACH**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

This case grew out of Ms. Donna Meyers's employment at the Eastern Oklahoma County Technology Center. During her employment, Ms. Meyers had a disagreement with a subordinate who taught at the school. When the school superintendent learned of the situation, he instructed Ms. Meyers to consult another supervisor before taking any action against the subordinate. Four days later, Ms. Meyers violated this instruction by taking away two of the subordinate's classes. The school superintendent viewed this violation as insubordination and recommended the firing of Ms. Meyers. She sued the school and the superintendent, alleging retaliation for engaging in protected speech and deprivation of procedural due process. The district court granted summary judgment to the defendants, and Ms. Meyers appealed.

To decide her appeal, we ask two questions:

1. Can a reasonable trier of fact conclude that school administrators retaliated against the plaintiff when she directly disobeyed instructions?

2. Can a reasonable trier of fact infer denial of due process, in the absence of a liberty or property interest, based on inadmissible hearsay?

We conclude that no reasonable trier of fact could find retaliation or denial of due process. As a result, we affirm.

## I. Standard of Review

"We review the district court's grant of summary judgment de novo, employing the same legal standard applicable in the district court." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1311 (10th Cir. 2009). Summary judgment is appropriate only if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## II. The Termination of Ms. Meyers

To analyze Ms. Meyers's claims, we must understand what she did and why. We derive our understanding from the summary judgment record, viewed in the light most favorable to Ms. Meyers. *See Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007).

### A. The Tuberculosis Testing

The Eastern Oklahoma County Technology Center is a public career and technology education center, which employed Ms. Meyers as the adult education coordinator in the EMT program. She supervised Ms. Lisa

3

Gonzales-Palmer, an instructor at the school who also worked for Air Evac, a company providing air ambulance services.

Students had to submit proof of tuberculosis testing before taking EMT classes. About six students submitted documentation of their tests, but the school lost the documents. Rather than requiring the students to assume the cost of obtaining a new test, Ms. Gonzales-Palmer agreed to retest the students.

Ms. Gonzales-Palmer began to do so, removing a vial of purified protein derivative (PPD) from her Air Evac jumpsuit and telling Ms. Meyers that she was going to perform tuberculosis skin tests on the students. Ms. Meyers told Ms. Gonzales-Palmer not to perform the tests, believing she was unqualified and suspecting she had stolen the PPD from Air Evac.

Ms. Meyers later found "PPD Administration/Reporting" forms in six students' education records. These forms showed that Ms. Gonzales-Palmer had administered the tests in disregard of Ms. Meyers's instructions.

### B. Unauthorized Termination of Ms. Gonzales-Palmer

Seeking guidance about how to handle Ms. Gonzales-Palmer's actions, Ms. Meyers called Mr. Ron Feller, an Air Evac manager who had previously worked for the Oklahoma State Department of Health. Ms. Meyers did not mention Ms. Gonzales-Palmer, but Mr. Feller inferred

4

from their discussion that Ms. Gonzales-Palmer was the person who had administered the tests. Mr. Feller told Ms. Meyers to speak with Ms. Judy Dyke, who was Ms. Gonzales-Palmer's manager at Air Evac and had recently said that a vial of PPD was missing. Ms. Dyke contacted Ms. Meyers and asked her to cooperate in an investigation by Air Evac.

Ms. Meyers met with Ms. Gonzales-Palmer to discuss the testing. Ms. Gonzales-Palmer explained that she had performed the tests at the direction of three Technology Center instructors. Dissatisfied with this explanation, Ms. Meyers terminated Ms. Gonzales-Palmer's employment.

### C.  Warning to Ms. Meyers

Ms. Gonzales-Palmer informed the school's administration of her termination. Shortly thereafter, the school superintendent met with Ms. Meyers, telling her that she lacked authority to terminate employees and that Ms. Gonzales-Palmer would be reinstated. The superintendent warned Ms. Meyers that she was not to retaliate against Ms. Gonzales-Palmer or talk to anyone about Ms. Gonzales-Palmer's testing of the students. A short time later, Ms. Meyers informed Ms. Dyke of the termination of Ms. Gonzales-Palmer and the lot number of the PPD used in the tests.

The superintendent learned of Ms. Meyers's communication with Air Evac and was not pleased. He admonished Ms. Meyers, telling her that she could be fired if she retaliated against Ms. Gonzales-Palmer, continued to

5

take unauthorized action, or failed to comply with other directives. The superintendent added that "[t]o the extent [Ms. Meyers] believe[d] that the hiring, termination (or other adverse action) of an employee [was] in the best interest of [the Technology Center] [she] should promptly meet with Mr. O'Boyle." Applt. App. Vol. 1, pt. 1 at 135.

Four days after the meeting, Ms. Meyers submitted an "Amendment to Course Authorization Request Form" for two courses in the EMT program without receiving approval from Mr. O'Boyle. *See* Applt. App. Vol. 1, pt. 1 at 143 (stating that Mr. O'Boyle discovered the change the day after it was made). In this form, Ms. Meyers removed Ms. Gonzales-Palmer as co-instructor for the two courses. Mr. O'Boyle discovered the amendment and reported to the superintendent that Ms. Meyers had taken action against Ms. Gonzales-Palmer.

### D. Suspension of Ms. Meyers

Upon learning of this incident, the superintendent arranged a meeting with Mr. O'Boyle and Ms. Meyers. At the end of the meeting, the superintendent notified Ms. Meyers that she was suspended with pay. The next day, the superintendent learned that Ms. Meyers had failed to renew the school's certification as an EMT training site.

The superintendent advised Ms. Meyers that he was recommending her termination. The same day, Ms. Meyers made a written complaint to the Oklahoma State Department of Health about the tuberculosis testing.

6

Two days later, the superintendent sent Ms. Meyers a letter, saying he had recommended termination because she

- provided Air Evac with confidential employee records and emailed confidential records to her home computer,

- failed to communicate with supervisors regarding contact with Air Evac despite warnings about her duty to communicate with supervisors,

- failed to respond candidly to questions about Ms. Gonzales-Palmer,

- retaliated against Ms. Gonzales-Palmer after being told not to retaliate, and

- allowed expiration of the Technology Center's certification as a training site.

### E.    Ms. Meyers's Hearing and Termination

The superintendent told Ms. Meyers that he would allow her to appeal his decision, though she had no right to an appeal.  She took advantage of this opportunity and appeared with counsel at a hearing before the school's board.  The board voted to terminate Ms. Meyers, finding that

- Ms. Meyers had repeatedly failed to communicate with supervisors despite warnings to communicate,

- Ms. Meyers had not been candid in her meeting with the superintendent,

- Ms. Meyers had retaliated toward another employee and violated the superintendent's instructions, and

7

- the superintendent's firing had been based on Ms. Meyers's consistent failure to report important EMT matters.

With this action by the board, Ms. Meyers lost her job.

## III.  Section 1983 Claims and the Ruling in District Court

Ms. Meyers sued under § 1983, alleging

- denial of the right to free speech because she was suspended and terminated for reporting the illegal administration of tuberculosis testing, and

- deprivation of procedural due process based on bias of the board in her termination hearing.

The district court granted summary judgment to the school and the superintendent.

## IV.  Retaliation Claims Involving Violation of the First Amendment

Generally, public employees cannot be terminated for engaging in protected speech. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1201 (10th Cir. 1998). Ms. Meyers claims retaliation for protected speech involving discussion of the tests with the Oklahoma State Board of Health and Air Evac. The district court acknowledged that these discussions involved protected speech, but concluded they did not cause Ms. Meyers's termination. We agree that the termination did not result from protected speech.

8

### A. The Five-Pronged Test

The claims trigger the five-pronged *Garcetti-Pickering* test. *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014). Under this test, Ms. Meyers can prevail only if

1. her speech was not made pursuant to official job duties,

2. her speech involved a matter of public concern,

3. her free speech interests were not outweighed by the defendants' interest in promoting workplace efficiency,

4. the speech was a motivating factor in the suspension and termination, and

5. the defendants would not have reached the same employment decision without the protected speech.

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007).

### B. The District Court's Reasoning

The district court held that Ms. Meyers had satisfied the first three prongs, establishing constitutional protection as a matter of law. *See Connick v. Myers*¸ 461 U.S. 138, 148 n.7 (1983) (explaining that the existence of protected speech is a question of law). For the sake of argument, we assume that the district court was correct. *See Trant v. Oklahoma*, 754 F.3d 1158, 1166 (10th Cir. 2014) (assuming satisfaction of the first four prongs when the defendant was entitled to summary judgment based on the fifth prong). The court held that

9

- the claim failed on the fourth prong with respect to communications with the Board of Health, and

- the claim failed on the fifth prong with respect to communications with Air Evac.

## C.    The Burden of Proof

Ms. Meyers bears the burden of proof on the fourth prong. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  The fifth prong involves an affirmative defense, and the defendants bear the burden of proof.  *Trant v. Oklahoma*, 754 F.3d 1158, 1167 (10th Cir. 2014).

## D.    Communication with the Oklahoma State Board of Health

The district court concluded that Ms. Meyers had failed to create a material factual dispute on retaliation for her communications with the Oklahoma State Board of Health.  On this claim, the court determined that the communication was not a motivating factor for the termination (fourth prong) because the school superintendent had not known about Ms. Meyers's communication to the Board of Health when he recommended termination.  Because the superintendent could not have relied on something he did not know about, the court concluded that Ms. Meyers's conversation with the Board of Health was not a motivating factor in the suspension or termination.

Ms. Meyers did not address this issue in her briefs.  Although she did so in oral argument, we need not consider "[a]n argument made for the first

10

time at oral argument." *Corder v. Lewis Palmer Sch. Dist. No. 38*¸ 566 F.3d 1219, 1235 n.8 (10th Cir. 2009).  In the absence of briefing, we decline to consider Ms. Meyers's argument on the fourth prong.

### E.    Communication with Air Evac

The district court relied on the fifth prong in rejecting Ms. Meyers's claim involving her conversation with Air Evac personnel.

A district court's grant of summary judgment based on the fifth prong is appropriate only if "'any reasonable jury would [have found] that [the plaintiff] would have been terminated even absent any desire on the Defendants' part to punish [her] in retaliation for his allegedly protected speech.'" *Trant v. Oklahoma*, 754 F.3d 1158, 1167 (10th Cir. 2014) (quoting *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 117 (2d Cir. 2011)).  As a result, summary judgment was appropriate only if any reasonable jury would have found that the superintendent would have recommended the firing of Ms. Meyers even without the protected speech. Under this standard, the defendants are entitled to judgment, for they have proven that the superintendent would have recommended the firing even if Ms. Meyers had not continued her discussions with Air Evac.

After the Technology Center rehired Ms. Gonzales-Palmer, the superintendent cautioned Ms. Meyers that any retaliation against Ms. Gonzales-Palmer could result in Ms. Meyers's termination.  In the written

11

admonishment, the superintendent told Ms. Meyers that she was to consult Mr. O'Boyle before taking any adverse action against an employee.

Only four days after receiving this admonishment, Ms. Meyers admittedly took further action against Ms. Gonzales-Palmer without contacting Mr. O'Boyle. Ms. Meyers contacted the Oklahoma Health Board to have Ms. Gonzales-Palmer's name removed as an instructor for two courses. When the board voted to terminate Ms. Meyers, it cited this retaliation against Ms. Gonzales-Palmer as a direct violation of the superintendent's instructions.

The district court concluded that regardless of Ms. Meyers's continued discussions with Air Evac, the superintendent would have recommended the firing based on insubordination. We agree.

Ms. Meyers argues that the district court erred because

- she did not act with retaliatory intent when she removed Ms. Gonzales-Palmer as an approved instructor, and

- her removal of Ms. Gonzales-Palmer constituted protected speech because of its relationship with protected speech.

We reject both arguments.

We reject the first argument. Ms. Meyers asserts that she had Ms. Gonzales-Palmer removed as an instructor for the classes not to retaliate, but to "'protect the welfare first of the students and next of the facility.'" Appellant's Opening Br. at 18 (quoting Applt. App. Vol. 2, pt. 1 at 90).

12

With these intentions, Ms. Meyers denies insubordination. But, the fifth prong relates to the superintendent's intent, not Ms. Meyers's.

When Ms. Meyers took that action, the superintendent would undoubtedly have recommended the firing based on insubordination even if Ms. Meyers had good intentions in taking away Ms. Gonzales-Palmer's two classes.[1] *See Trant v. Oklahoma*, 754 F.3d 1158, 1169 (10th Cir. 2014) (holding that the defendants were entitled to summary judgment on a retaliation claim because any impermissible motive would have been minimal in light of the employee's "inappropriate comments, insubordination, and other serious reasons for termination"); *accord Graber v. Clarke*, 763 F.3d 888, 892, 899-900 (7th Cir. 2014) (holding that no causal link existed between an employee's protected speech and an adverse employment action because of the employee's insubordinate manner of speaking to a supervisory employee). The superintendent told Ms. Meyers to consult Mr. O'Boyle before taking *any* action against an employee. Only four days later, Ms. Meyers removed Ms. Gonzales-Palmer's name as an instructor on two courses without contacting Mr. O'Boyle. From the superintendent's perspective, Ms. Meyers's insubordination was quick and unequivocal.

---

[1] Ms. Meyers does not question an employer's right to terminate an employee for insubordination. Indeed, Ms. Meyers states that she terminated Ms. Gonzales-Palmer's employment based in part on insubordination. Appellant's Opening Br. at 12 ¶ 6.

13

We also reject Ms. Meyers's second argument, concluding that her conduct does not trigger constitutional protection simply because the situation had grown out of the exercise of protected speech.

Ms. Meyers suggests that the situation arose only because she had engaged in protected speech with Air Evac. For the sake of argument, we assume Ms. Meyers is correct. If Ms. Meyers had not spoken to Air Evac, the superintendent might never have prohibited Ms. Meyers from taking action against Ms. Gonzales-Palmer. But, that is the situation that existed.

Facing that situation, Ms. Meyers could have complied without any risk of compromising her right to free speech. Instead, she disobeyed the superintendent's instruction. Her prior exercise of free speech did not handcuff the school in dealing with that act of disobedience. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286 (1977) (stating that an employer can decline to renew an employee's contract based on his performance even if his exercise of protected conduct had made the employer "more certain of the correctness of its decision").

That act of disobedience was not constitutionally protected, for it involved conduct rather than speech. *See Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 65 (2006) ("[W]e have extended First Amendment protection only to conduct that is inherently expressive."). This action would have been constitutionally protected only if Ms. Meyers was intending to convey a particularized message and the Oklahoma State

14

Department of Health was likely to understand that message. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). No fact-finder could have reasonably expected the Department of Health to understand a particularized message when told to remove Ms. Gonzales-Palmer's name as an instructor. Thus, the constitution would not have prevented the superintendent from recommending Ms. Meyers's firing based on her conduct with the Department of Health.

In these circumstances, we reject Ms. Meyers's two arguments. The district court correctly rejected the claim because the superintendent would have recommended the firing based on Ms. Meyers's insubordination.

## V.    Claims Involving Deprivation of Procedural Due Process

Ms. Meyers also claims that she was not afforded procedural due process because the board hearing was inadequate. This claim fails as a matter of law.

Courts engage in a two-step inquiry to determine if an individual was denied procedural due process:

1.    Did the individual have a protected interest that would trigger the right to due process?

2.    If the individual had a protected interest, was the process adequate?

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir. 2007).

Ms. Meyers has not alleged a protected interest that would trigger the constitutional right to due process (the first prong). The district court noted this failure, and Ms. Meyers failed to address the issue in her appellate briefs.[2] We cannot assess whether the hearing was sufficient without identifying the protected interest.

Even if Ms. Meyers was entitled to a hearing, the claim would fail. She relies solely on a combination of out-of-court statements by Mr. O'Boyle and the superintendent:

- Mr. O'Boyle told her (the first out-of-court statement) that

- the superintendent had admitted rigging the hearing (the second out-of-court statement).

---

[2]    In her opening brief on this issue, Ms. Meyers misquoted a section of the district court's opinion. She quoted: "'Although defendants have addressed both prongs of the two-step inquiry in their motion, Meyers argues, in her briefing, that she was not afforded a meaningful opportunity to be heard.'" Appellant's Opening Br. at 19. In fact, the district court said: "Although defendants have addressed both prongs of the two-step inquiry in their motion, Meyers *only* argues, in her briefing, that she was not afforded a meaningful opportunity to be heard." Applt. App. Vol. 3 at 50 (emphasis added). The district court added: "Even if Meyers were able to satisfy the first prong of the two-step inquiry, which she has not addressed, the court finds that Meyers has failed to raise a genuine issue of material fact to avoid summary judgment in regard to the second step of the two-step inquiry." *Id.*

16

What the superintendent said is arguably an admission of a party opponent. *See* Fed. R. Evid. 801(d)(2). But what Mr. O'Boyle said to Ms. Meyers is not.[3]

Ms. Meyers asserts that Mr. O'Boyle's remark falls under the state of mind exception to the hearsay rule. *See* Fed. R. Evid. 803(3). But, this exception would cover Mr. O'Boyle's state of mind, not the superintendent's. *See United States v. Joe*, 8 F.3d 1488, 1493 n.4 (10th Cir. 1993) ("An out-of-court statement relating a third party's state of mind falls outside the scope of the hearsay exception because such a statement necessarily is one of memory or belief.").

Mr. O'Boyle's state of mind is irrelevant: The rigging was allegedly done by the superintendent, not Mr. O'Boyle. Thus, the state of mind exception would not support the admissibility of Mr. O'Boyle's alleged remark. Because Mr. O'Boyle's alleged remark is not admissible, it could not be considered as evidence of bias by the superintendent or the board. *See Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995) (holding "that [Fed. R. Civ. P.] 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment").

---

[3] When Mr. O'Boyle allegedly made the statement, he was no longer an employee of the school. *See* Appellant's Opening Br. at 14 ¶ 15. Thus, Mr. O'Boyle's statement could not constitute an admission of an opponent. *See* Fed. R. Evid. 801(d)(2)(D).

**VI.** **Conclusion**

We affirm the district court's award of summary judgment. Viewing the evidence favorably to Ms. Meyers, the fact-finder could not reasonably infer retaliation for protected speech or deprivation of procedural due process.